FILED

2013 Sep-11  PM 02:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RALI 2005QS10, | } } } | |
| | } | CIVIL ACTION NO. |
| Plaintiff/Counterclaim Defendant, | } } | 2:11-cv-04027-WMA |
| | } | |
| v. | } } | |
| ASHLEY T. GARST, | } } | |
| Defendant/Counterclaim Plaintiff, | } } | |
| | } | |
| v. | } } | |
| GMAC MORTGAGE, LLC, | } } | |
| Counterclaim Defendant. | } | |

**MEMORANDUM OPINION**

This case follows upon a mortgage default and subsequent foreclosure.  Plaintiff and counterclaim defendant Deutsche Bank Trust Company Americas, as trustee for RALI 2005QS10, ("Deutsche") brought suit for ejectment against defendant and counterclaim plaintiff Ashley Garst ("Garst") for possession of Garst's residence after a foreclosure sale at which Deutsche was the purchaser.  Garst denies that Deutsche has a present right to possession and seeks damages against Deutsche under a variety of theories related to alleged improper collection procedures.[1]

---

[1] For ease of reference, Deutsche and Garst will be referred to by name, rather than by "plaintiff" or "defendant."  However, for the sake of citations to the record, "plaintiff" is Deutsche and "defendant" is Garst.

Before the court is Deutsche's motion for summary judgment for ejectment and for dismissal of all of Garst's counterclaims (Doc. 22). The court concludes for the following reasons that Deutsche's motion must be granted in part and denied in part.

## BACKGROUND

### The Mortgage and Foreclosure

On May 16, 2005, Garst received a loan of $104,000.00 from Homecomings Financial Network, Inc. ("HFN"). Garst Dep., Pl.'s Ex. B, at 26-28. The loan was memorialized by a promissory note ("the Note"), Pl.'s Ex. 1, and secured by a mortgage ("the Mortgage"), Pl.'s Ex. 2. The Note was made payable to and delivered directly to the lender, HFN, Pl.'s Ex. 1, whereas the named Mortgagee was Mortgage Electronic Registration Systems, Inc. ("MERS"), as the nominee of HFN, Pl.'s Ex. 2. Both the Note and the Mortgage were by their terms fully assignable. *See* Pl.'s Ex. 1, 2.

In 2008, Garst began to struggle with his payments. Def.'s Facts ¶ 5; Pl.'s Facts ¶ 6. Despite efforts to modify the Mortgage, he defaulted on it in mid-2009, and has been in default since then. Def.'s Facts ¶ 6; Pl.'s Facts ¶ 8.

There is some dispute as to the path of ownership of the Mortgage, and it is made no clearer by the fact that most of the entities involved appear to own each other in some way or another. This court has frequently made clear its unhappiness with the "once mighty global secondary mortgage loan market." *Duke v. Nationstar*

2

*Mortgage, L.L.C.*, 893 F. Supp. 2d 1238, 1241 (N.D. Ala. 2012). This unhappiness is shared by many courts, including the Ninth Circuit, which began an opinion as recently as August 8, 2013, with these words:

> The U.S. Department of the Treasury, acting under the direction of Congress, launched the Home Affordable Modification Program ("HAMP") in 2009 to help distressed homeowners with delinquent mortgages, but the program seems to have created more litigation than it has happy homeowners.

*Corvello v. Wells Fargo Bank, NA*, 11-16234, 2013 WL 4017279, at *1 (9th Cir. Aug. 8, 2013).  The instant case will make this court no happier.  This court is unfamiliar with RALI 2005QS10, apparently the *cestui que* trust for which, or for whom, Deutsche is acting as trustee.  Curiosity will not cause the court to ask Deutsche to reveal the nature of RALI 2005QS10, which for aught appearing is a microdot in the sky or a device for packaging a divided ownership.

It is not disputed that on August 9, 2010, MERS, that wonderful mortgage industry invention, assigned the subject Mortgage to Deutsche.  Pl.'s Ex. 3.  This assignment included an "Agreement for Signing Authority" that divided or purported to divide the handling of the Mortgage among MERS, counterclaim defendant GMAC Mortgage, LLC ("GMAC"), and Sirote & Permutt, P.C., a law firm.  *Id.*  Presumably any one of these three could act as servicer.  Who would decide which of the three would actually perform the duties of servicer is not found in the record, but it was GMAC that took upon itself the responsibility for servicing the

3

Mortgage.  It was GMAC with whom Garst worked, throughout 2011, in an attempt to reach a loan modification agreement to cure his default.  Def.'s Facts ¶ 7; Pl.'s Facts ¶ 10.  In June, 2011, GMAC rejected Garst's application for modification, Def.'s Fact ¶ 50, sent him a notice of acceleration, Pl.'s Facts ¶ 11, and scheduled a foreclosure sale for July, *id.*  Nevertheless, modification forms continued to fly back and forth throughout the summer and into the fall of 2011, Def.'s Facts ¶¶ 52-55, and the foreclosure sale was rescheduled for September 12, 2011, Pl.'s Facts ¶¶ 13-14.

On August 29, 2011, GMAC notified Garst that, despite their voluminous correspondence, Garst's modification application was still deficient because it lacked required information and that there would be no further review of his application.  Def.'s Facts ¶ 58; Pl.'s Facts ¶ 14.  In contradiction to this seemingly final decision, correspondence continued, now by telephone, as the second foreclosure date approached.  GMAC had a policy requiring all modification packages to be received at least seven days prior to a foreclosure sale.  Pl.'s Facts ¶ 15.  While this policy had been included in the earlier forms mailed to Garst, *id.*, it was not mentioned during 11th hour telephone negotiations, Def.'s Facts ¶¶ 57-63.  Deutsche did not hang up the telephone on Garst.  Instead, it continued to listen.

On September 9, 2011, Garst finally completed his modification package with all essential information on the required forms.

4

Def.'s Facts ¶ 67.  By telephone, GMAC confirmed receipt of this amended application, and, according to Garst, assured him that his foreclosure would again be postponed while the completed application was being reviewed.  Def.'s Facts ¶¶ 66-71.

Despite this conversation, the foreclosure sale took place on September 12, 2011.  Pl.'s Facts ¶ 17.  Deutsche purchased the property as the highest bidder.  *Id.* ¶ 19.  On September 13, the next day, Deutsche sent a Demand for Possession letter to Garst. *Id.* ¶ 20.  On September 14, GMAC notified Garst in writing that his September 9 modification papers would not be reviewed because they had been received too close to the date of the foreclosure sale. *Id.* ¶ 22.  Why GMAC did not simply say that there could be no review because the sale had already taken place is anybody's guess. There was no mention of the telephone assurance of September 9 that there would be no foreclosure while the finally completed application was being reviewed.

**Procedural History**

On September 19, 2011, after Garst refused to vacate the foreclosed property which was his home, Deutsche brought this action for ejectment in the Circuit Court of Jefferson County, Alabama.  Garst answered with a denial of Deutsche's claim of a valid title, and counterclaimed on numerous federal and state law grounds related to the pre-foreclosure negotiations.  Garst named GMAC as a second counterclaim defendant.  GMAC and Deutsche

thereafter removed the case to this court based on federal question jurisdiction over Garst's federal claims and supplemental jurisdiction over Garst's state law claims and Deutsche's ejectment claim.[2]

On May 14, 2012, GMAC filed for bankruptcy. Garst's claims against it were therefore automatically stayed, so that only Deutsche and Garst remain as parties for purposes of this opinion. Now, after significant discovery, Deutsche seeks summary judgment on its affirmative ejectment action and dismissal of all of Garst's claims.

## ANALYSIS

For purposes of this opinion, the parties' many arguments are sorted into three categories: (1) Garst's federal claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; (2) Garst's state law claims; and (3) Deutsche's claim of ejectment.

## I.  GARST'S FDCPA CLAIMS

The FDCPA is a federal statute designed to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to

---

[2] More recently, the parties have described the court's subject matter jurisdiction over the state law claims as based on diversity under 28 U.S.C. § 1332.  Am. Countercl. ¶ 3.  The court is satisfied that it has jurisdiction over the entire case under either theory.

promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Garst alleges that Deutsche made false or misleading representations in violation of § 1692e, used unfair collection methods in violation of § 1692f, harassed and abused him in violation of § 1692d, and failed to provide him proper notice of collection under § 1692g.

Deutsche seeks summary judgment on either or both of two grounds: (1) the FDCPA does not apply because Deutsche is not a "debt collector" as defined in § 1692a, Pl.'s Mot. at 26, and/or (2) no violation is possible because the foreclosure occurred only after default and notice, *id.* at 27.  The court takes these two arguments in turn.

**A.  Is Deutsche a "Debt Collector"?**

The FDCPA's prohibitions apply only to "debt collectors." *See, e.g.*, §§ 1692e-1692f.  Under the statute, a debt collector is one who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  § 1692a(6).  Deutsche argues that it does meet this definition for three reasons: first, because it was enforcing a security interest, not collecting a debt; second, because any debts being collected were not "due another,"; and third, because the FDCPA definition does not allow for vicarious liability, and therefore Deutsche cannot be held liable for the actions of GMAC, its agent.

1.  "Collecting Debt"

Deutsche's argument that it was not collecting debt stems from *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. App'x 458, 460 (11th Cir. 2009), an unpublished opinion holding that "enforcement of a security interest through the foreclosure process is not debt collection for purposes of the [FDCPA]."  *See also Ausar-El ex rel. Small, Jr. v. BAC (Bank of Am.) Home Loans Servicing LP*, 448 Fed. App'x 1, 2 (11th Cir. 2011).  The *Warren* court based its analysis on the proviso in § 1692a(6) that, "[f]or the purpose of section 1692f(6) of [the statute], such term ["debt collector"] also includes any person . . . in any business the principal purpose of which is the enforcement of security interests."  342 Fed. App'x at 460.  Drawing on the interpretive canon *expressio unius est exclusio alterius*, the court reasoned that the express inclusion of security interest enforcers as "debt collectors" for the purposes of one section of the statute (§ 1692f(6)) impliedly excluded security interest enforcers from liability under the rest of the statute (*e.g.*, § 1692e).  Applying this rule, Deutsche should be entitled to summary judgment on Garst's non-1692(f)(6) claims.

However, the *Warren* rule has been undermined, if not overturned, by two subsequent Eleventh Circuit opinions, including one that is published and thus, unlike *Warren*, is binding on this court.  *See Reese v. Ellis, Painter, Ratterree &*

8

*Adams, LLP*, 678 F.3d 1211, 1216-19 (11th Cir. 2012); *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 F. App'x 579, 581-83 (11th Cir. 2012); *see also Santiago v. EverBank*, 1:12-CV-2793-VEH, 2013 WL 1176074, at *3-*4 (N.D. Ala. Mar. 19, 2013).  If nothing else, it is now clear that "the enforcer of a security interest [can] be held liable under the FDCPA beyond § 1692f(6)" because, in one fell swoop, "an entity can **both** enforce a security interest **and** collect a debt."  *Birster*, 481 F. App'x at 583 (emphasis added) (citing *Reese*, 678 F.3d at 1217-18).  As explained by the *Reese* court:

> That rule [that security interest enforcement actions are excluded *per se* from FDCPA coverage] would create a loophole in the FDCPA. A big one. In every case involving a secured debt, the proposed rule would allow the party demanding payment on the underlying debt to dodge the dictates of § 1692e by giving notice of foreclosure on the secured interest. The practical result would be that the Act would apply only to efforts to collect unsecured debts. So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right. It isn't. A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A debt is still a "debt" even if it is secured.

678 F.3d at 1217-18.  Thus, so long as Deutsche was attempting to collect a debt, it is subject to the FDCPA guidelines, regardless of whether it was simultaneously enforcing a security interest.

In this case there is more than adequate evidence upon which Garst can proceed to trial on his allegation that Deutsche was collecting a debt.  First, as discussed in greater detail in the

section that follows, Deutsche acquired a mortgage that was already in default.  Thus, it acquired not only the security interest in the subject property, but the monetary obligation that was secured, including monies that had accrued but had not been paid.  Second, like the defendant in *Reese*, 678 F.3d at 1216-17, Deutsche acquired possession of the Note along with an assignment of the Mortgage.  Pl.'s Facts ¶ 4.  A promissory note constitutes "a 'debt' within the plain language of § 1692a(5)." *Reese*, 678 F.3d at 1216-17 (citations omitted).  Finally, Deutsche repeatedly held itself out to Garst as a debt collector. Def.'s Facts ¶ 26; Montoya Dep., Def.'s Ex. E, at 157-58.  An entity's own description of its function may not be dispositive on the subject, *see Prickett v. BAC Home Loans*, 2:12-CV-0826-LSC, 2013 WL 2248135, at *11 (N.D. Ala. May 21, 2013) ("[T]he relevant test of whether an entity is a debt collector under the FDCPA is whether the statutory definition applies, not whether the entity has ever stated in a document that it is a debt collector."), but it is highly relevant, *see Reese*, 678 F.3d at 1217 (ruling defendant was a debt collector "[i]n light of all [the] language stating that the law firm is attempting to collect a debt"); *see also Birster*, 481 F. App'x at 583.

**2.  "Due Another"**

Even if an entity is collecting a debt, it is not a "debt collector" under the FDCPA unless the debt is "due another."

10

§ 1692a(6).  The term "debt collector" does not include a person "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person."  § 1692a(6)(F).  Put more simply, the FDCPA does not apply to creditors who seek to collect only what is owed them.  It only applies to third party debt collectors.

Under this definition, "a mortgagee and its assignee, including mortgage servicing companies, are not debt collectors under the FDCPA **when the debt is not in default at the time the mortgage-holder acquires the debt.**"  *Prickett*, 2013 WL 2248135, at *10 (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)) (emphasis added).  However, as *Prickett* recognizes, a different scenario is presented when the debt is already in default at the time it is acquired.  *See id.*; § 1692a(F) (excluding from coverage only any debt that was "not in default at the time it was obtained").  Under such circumstances, the acquiring party acquires the **debt**, and not just the **security interest**, and so becomes a "debt collector" under the statute.

The parties agree that Garst's first missed payment on his mortgage was in mid-2009.  *See* Pl.'s Facts ¶ 8 ("[Garst d]efaulted on or about May 1, 2009.");  Def.'s Facts ¶ 6 ("As of

July 2, 2009, Garst had missed a payment and was in default on the loan."). The parties also agree that the Mortgage and the Note were assigned to Deutsche on August 9, 2010. *See* Pl.'s Facts ¶ 4; Def.'s Facts ¶ 29; Pl.'s Ex. 3.[3] Because Deutsche thus acquired the rights to over a year's worth of delinquent payments along with a security interest, it became a debt collector under the FDCPA.

### 3.  Vicarious Liability

Deutsche's final defense to Garst's attempt to classify it as a debt collector is that all of the debt collection correspondence relied upon by Garst was undertaken by GMAC, one of the three mortgage servicers, rather than by Deutsche itself. Pl.'s Reply at 8-9. The FDCPA's narrow focus on debt collectors, Deutsche argues, means that a non-debt-collector principal cannot be held liable under *respondeat superior* for the actions of its debt-collector agent. *Id.*

The Eleventh Circuit has not addressed this issue directly, and it is tempting to avoid the issue under the rule that an issue raised for the first time in reply is not properly before

---

[3] During discovery, a representative of Deutsche testified that Deutsche had actually acquired the Mortgage five years earlier, in July, 2005. *See* Montoya Dep., Def.'s Ex. E, at 159-67. But this date contradicts the date provided in Deutsche's Statement of Facts, Pl.'s Facts ¶ 4, and is otherwise unsupported by any documentary evidence. At best, the assertion creates a bothersome question of fact that must be resolved at trial. It again illustrates the foggy landscape under the MERS regime.

the court.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338,
1342 (11th Cir. 2005) (collecting cases).  Deutsche did not raise
this issue until its reply brief.  *See* Pl.'s Reply at 8-9.
However, because the court concludes that Deutsche is not immune
from vicarious liability, it is unnecessary to determined whether
the issue has been waived.

The parties agree that *Pollice v. Nat'l Tax Funding, L.P.*,
225 F.3d 379, 404-05 (3d Cir. 2000) provides the rule that
governs this issue; indeed, *Pollice* has been cited with approval
by the Eleventh Circuit for the closely related proposition that
a general partner of a debt collector partnership can be held
liable for the partnership's violations of the FDCPA.  *See*
*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1201 (11th Cir.
2010).  The *Pollice* court determined that "an entity which itself
meets the definition of 'debt collector' may be held vicariously
liable for unlawful collection activities carried out by another
on its behalf."  225 F.3d at 405.  However, "vicarious liability
[can]not be imposed [when] the [principal] company itself [does]
not meet the definition of 'debt collector'."  *Id.* (citing
*Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir.
1996)).  The parties' only disagreement, then, is over how the
rule should be applied in deciding whether Deutsche itself meets
the definition of "debt collector."

This court concludes that Deutsche meets the definition of

debt collector, just as does GMAC.  The FDCPA applies only to those who undertake to collect a debt on a creditor's behalf. *See* 15 U.S.C. § 1692a(6).  This proposition would lose its meaning altogether if the original creditor were always subject to vicarious or *respondeat superior* liability when his or its servicer undertook to collect.  In this case, however, Deutsche was not the original creditor.  It only became a debt collector when it acquired a loan that was already in default.  It undertook, in a real sense, to collect that debt on behalf of the microdot in the sky represented by MERS, and/or on behalf of RALI 2005QS10, the *cestui que* trust to whom it owed a fiduciary duty to collect the debt, and/or on behalf of HFN, which for aught appearing to Garst was still the owner of the Note.  Deutsche is thus subject to the mandates of the FDCPA, whether it acted directly or through GMAC, its agent.

**B.  Has Garst Produced Evidence of Violations?**

The fact that Deutsche is a "debt collector" subject to the FDCPA does not end the inquiry.  In order to avoid summary judgment, Garst must also present evidence that Deutsche actually violated the FDCPA.  Deutsche argues that it has not violated the statute, not only because GMAC's actions cannot be attributed to it (an argument already rejected), but because "all evidence before [the] Court proves that Deutsche Bank acted properly and within its legal rights in accelerating and foreclosing on

14

Garst's Mortgage."  Pl.'s Mot. at 27.  More specifically, it argues that "Garst has admitted that he was in default"; that he "received notice of his default, acceleration of the indebtedness, and the foreclosure"; and that the foreclosure sale was only held "after these notifications and proper publication in the <u>Alabama Messenger</u>."  *Id.*

Deutsche misunderstands the nature of the FDCPA.  The statute dictates, for the most part, what a debt collector **must not** do, not what it **must** do.  In other words, the fact that Deutsche went through the routine steps for a foreclosure in Alabama, even if taken as established, does not free it from liability if it violated the FDCPA along the way.  It is the means, not the end, that creates liability.

It nevertheless remains for Garst to carry his burden of producing evidence upon which he can proceed to trial on one or more of the four sections of the FDCPA that he claims were violated.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that, to survive a motion for summary judgment, a party must make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").  This burden is not easily met.  Garst's entire argument on the issue of whether the FDCPA has been violated is limited to a remarkably unhelpful summary chart.  *See* Def.'s Mem. at 28-29.  Nevertheless, the

15

court, cobbling together the chart, the statement of facts that it references, and the discovery documents mentioned in that statement of facts, finds that some of Garst's FDCPA claims withstand summary judgment.

Garst's first and best claim is under § 1692e, which dictates that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Garst's evidence of misleading representations is not comprehensive, but it is significant and sufficient.  He presents evidence that Deutsche encouraged him to send supplement after supplement to his modification application, despite its likely knowledge that it would ultimately find modification hopeless, Def.'s Facts ¶¶ 51, 61; that it concealed important deadlines from him in their correspondence, *id.* ¶ 54; that it told him, contrary to fact, that his account would be reviewed for modification, *id.* ¶ 66; that it told him, contrary to fact, that his property would not be foreclosed on while his application was being reviewed, *id.* ¶ 70; and that it told him, contrary to fact, that the foreclosure sale date would be postponed, *id.* ¶ 71.  Should a jury find Garst's testimony and corroborating evidence credible, and should it find that the evidence demonstrates a "false, deceptive, or misleading representation or means in connection with the collection of any debt," Deutsche will be liable under § 1692e.

A more difficult question arises under § 1692f, which dictates that a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt." "Unfair or unconscionable means" include "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if––(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest." § 1692f(6).  Whether or not Deutsche violated this subsection hinges on whether or not it had a right to possession of the property at the time it brought this ejectment action.  As will hereinafter more clearly appear, the court concludes that Garst has produced sufficient evidence to proceed to trial on this question, but because the answer to the question will implicate Deutsche's ejectment claim, this discussion is consolidated with Part III, *infra*.

The last two federal claims to be considered are (1) Garst's claim under § 1692d, which prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," and (2) his claim under § 1692g, which requires debt collectors to send consumers a written notice including a variety of information before undertaking to collect a debt.  Because Garst does not address either of these sections in his brief, even in his summary chart, they are deemed abandoned and will not be analyzed.  *See Coal.*

*for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned.").

## II. GARST'S STATE LAW CLAIMS

In addition to the FDCPA claims, Garst raises a host of state law claims.  Garst's fraud claim is his most complex, so the court begins its analysis there.

### Fraud

Garst claims that Deutsche is liable for fraud stemming from untrue and unfulfilled promises it made during loan modification negotiations.  Am. Countercl. ¶¶ 87-121.  "The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Exxon Mobil Corp. v. Alabama Dep't of Conservation & Natural Res.*, 986 So. 2d 1093, 1114 (Ala. 2007).  Intent is only required in Alabama when punitive damages are sought.  *See id.*  At first glance, each element is met here: Garst has produced both direct and circumstantial evidence that Deutsche promised that foreclosure would not take place until review of his modification request was complete, Def.'s Facts ¶¶ 66-71; that the promise was material, *id.* ¶ 71; that he reasonably relied on the promise in foregoing other opportunities to save his home, *id.;* and that he

18

suffered damages in having his home foreclosed on.  If his
promissory fraud claim is viable, he has also produced
circumstantial evidence of intent sufficient to support punitive
damages.  *See* Am. Countercl. ¶¶ 100-01.

     Deutsche does not deny that these elements are met, but
defends with the argument that any evidence of them will be
inadmissible at trial because of Alabama's Statute of Frauds.
*See* Pl.'s Mot. at 22-23.  The Statute of Frauds provides, *inter
alia*:

> In the following cases, every agreement is void unless
> such agreement or some note or memorandum thereof
> expressing the consideration is in writing and subscribed
> by the party to be charged therewith or some other person
> by him thereunto lawfully authorized in writing: . . .
> (7) Every agreement or commitment to lend money, delay or
> forebear repayment thereof or to modify the provisions of
> such an agreement or commitment except for consumer loans
> with a principal amount financed less than $25,000.

Ala. Code § 8-9-2 (1975).  The Alabama courts have given this
statute broad application, holding that it applies in tort cases,
including fraud cases.  *See Bruce v. Cole*, 854 So. 2d 47, 58
(Ala. 2003) ("[T]his Court now holds that an oral promise that is
void by operation of the Statute of Frauds will not support an
action against the promisor for promissory fraud.").

     The Alabama rule is contrary to the majority rule among the
fifty states.  The majority rule was explained by the Seventh
Circuit as follows: "the Statute of Frauds is a defense to a
claim for breach of contract, not a defense to a tort, and fraud

19

is a tort, and promissory fraud is a form of fraud and so a tort and so not subject to the Statute of Frauds." *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011).   The Seventh Circuit correctly describes this as the majority rule, *id.*, but that court could not speak for Alabama. Mindful that it is the prerogative of the courts of Alabama, and not the courts of the United States, to declare Alabama law, this court reaches the conclusion, contrary to its instincts, that because the "agreement" Garst depends upon does not meet the requirements set forth in Alabama's Statute of Frauds, Garst cannot proceed on his claim of promissory fraud.

**Negligence and Wantonness**

Garst also brings state law claims for negligence, Am. Counterlc. ¶¶ 13-14, wantonness, *id.* ¶¶ 14-15, and negligent and wanton hiring, supervision, and training, *id.* ¶¶ 22-23.   These claims fail in light of the emerging consensus that "Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing." *Prickett v. BAC Home Loans*, 2:12-CV-0826-LSC, 2013 WL 2248135, at *5 (N.D. Ala. May 21, 2013) (collecting cases).   Courts have found two justifications for this conclusion.   First, "a negligent failure to perform a contract . . . is but a breach of the contract." *Id.* Accordingly, claims related to performance under a mortgage agreement must be brought under contract law. *See id.*   Second,

damages for mortgage servicing are typically economic, while tort liability more appropriately seeks compensation for personal injury and property damage. *See id.* at *6.[4]  Both justifications are strengthened by the plethora of alternative avenues for relief in "negligent mortgage servicing" cases, including the FDCPA.

**Slander of Title**

Next, Garst claims that Deutsche has slandered the title to his property. Am.  Counterlc. ¶¶ 76-82.  Slander of title as a cause of action in Alabama has six elements: "(1) [o]wnership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) [] publication . . . in disparagement of plaintiff's property or the title thereof; and (6) [] special damages [that are] the proximate result of such publication." *Folmar v. Empire Fire & Marine Ins. Co.*, 856 So. 2d 807, 809 (Ala. 2003) (citations omitted).  The third element, malice, "requires proof that [the

_____

[4] Garst's answer to this rule is that this court has already impliedly rejected it in its recent decision in *Lindsey v. NCO Fin. Sys., Inc.,* 2:11-CV-03183-WMA, 2012 WL 3999870, at *7-*9 (N.D. Ala. Sept. 12, 2012).  But *Lindsey* was not a mortgage servicing case, nor did it involve the same issues discussed above: the plaintiff's claim in that case was of wanton disclosure of embarrassing information that happened to occur in a debt collection context.  To the extent Garst's claim is about embarrassment, rather than economic injury, it fails as unsupported by the evidence.

defendant] intentionally disparaged [the] plaintiff's title to the property slandered or recklessly disparaged [it] without information sufficient to support a bona fide belief in the veracity of the disparaging statement." *Roden v. Wright*, 646 So. 2d 605, 611 (Ala. 1994) (internal quotation marks and citations omitted). "In other words, 'if the defendant had probable cause for believing the statement, there can in law be no malice.'" *Id.* (quoting *Merchants Nat. Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981)).

Garst argues that Deutsche slandered his title by publishing a foreclosure deed falsely asserting its ownership of the property. But to the extent he can prove that the foreclosure deed is invalid, and thus that he, and not Deutsche, owns the property, he can do so only after a trial that settles the closely contested issues discussed elsewhere in this opinion. Given the closeness of those issues, it is virtually impossible for Garst to prove malice. At the very least, Garst's admitted default and the methodical way in which Deutsche proceeded to the foreclosure sale, including consulting legal counsel, gave Deutsche "information sufficient to support a bona fide belief," *id.*, in the validity of its foreclosure deed. Without any direct evidence that Deutsche did not in fact so believe, Garst cannot carry his burden of producing evidence sufficient to support a jury finding of slander of title.

22

**Privacy**

Next is invasion of privacy.  Am. Countercl. ¶¶ 133-42.
"The tort of invasion of the right of privacy, insofar as it
applies to actions of a creditor in regard to his debtor, is the
wrongful intrusion into one's private activities in such manner
as to outrage or cause mental suffering, shame or humiliation to
a person of ordinary sensibilities."  *Liberty Loan Corp. of
Gadsden v. Mizell*, 410 So. 2d 45, 47 (Ala. 1982) (quotation marks
and citations omitted).  While the question of whether particular
behavior is outrageous to a person of ordinary sensibilities
would normally be put to a jury, the evidence presented in this
case is simply too sparse to justify moving the claim beyond
summary judgment.  Garst appears to confuse the issue of whether
there was an outrageous intrusion with whether there was a valid
foreclosure.  *See* Def.'s Mem. at 31 ("[Deutsche] rejected
documents it should not have, began foreclosure proceedings in
violation of its own policies, attempted to foreclose on property
it does not own, and foreclosed on Garst in violation of its own
policies and when it told him it wouldn't.").  The court is
puzzled by Garst's expectancy that an owner can foreclose on its
own property.  Past cases have only recognized intrusion cases in
the mortgage servicing context for "hounding the plaintiff," *Hope
v. BSI Fin., Inc.*, 5:12-CV-00736-AKK, 2012 WL 5379177, at *5
(N.D. Ala. Oct. 26, 2012), with "repeated conduct equating

deliberate harassment[] or systematic campaigns designed to vilify the debtor or expose him to public ridicule," *Mizell*, 410 So. 2d at 48.  In this case, the communications made to Garst were made only to him, and were made in response to his requests for loan modification.  In light of Garst's admitted default, the communications were not harassing threats so much as real warnings that foreclosure was imminent.

**Unjust Enrichment**

Count Three of Garst's counterclaim has deteriorated at an alarming rate.  It started as a classic claim for unjust enrichment, apparently seeking to recover payments made under the Mortgage.  Am. Countercl. ¶¶ 66-69.  Deutsche, however, briefs the claim entirely under the related, but separate, doctrine of implied contract.  Pl.'s Mot. at 13-15.  Finally, in his opposition to Deutsche's motion, Garst briefs the claim with only two sentences, mentioning neither the words "unjust enrichment" nor the words "implied contract."  Def.'s Mem. at 33.  The court is left wondering where to start.  Is Garst's claim for traditional unjust enrichment seeking his mortgage payments back under the theory that there was never any contract between him and Deutsche?  Certainly he could not be making such a frivolous contention.  Is he simply re-labeling his spurious breach of contract claim?  Is he arguing a breach of an implied contract stemming from the communications regarding a modification

agreement?  Whatever Garst means to contend, to the extent he has not abandoned his unjust enrichment claim, he has failed to meet his *Celotex* burden of producing evidence to support it.

**Breach of Contract**

Garst includes in his counterclaim the strange contention that he is entitled to relief for breach of contract, Am. Countercl. ¶¶ 83-86, but he produces neither legal authority nor evidence in support of such a position, Def.'s Mem. at 29.  His allegations make no mention of the attempted modification agreement, as either a contract-in-fact or an implied contract. Instead, he simply makes the conclusory allegation that Deutsche "breached the contract (the Note and the Mortgage)."  Am. Countercl. ¶ 84.  This bare legal conclusion is not legally sufficient to present a claim that can survive summary judgment. In fact, the overwhelming evidence shows that it was Garst, not Deutsche, who breached the contract.

**Wrongful Foreclosure**

Finally, Garst counterclaims for what he calls "wrongful foreclosure."  Am. Countercl. ¶¶ 70-75.  To the extent this claim alleges the tort of wrongful foreclosure, it is not briefed and is deemed abandoned.  *See Coal. for the Abolition of Marijuana Prohibition*, 219 F.3d at 1326.  To the extent it merely restates in non-legal terms the defense to Deutsche's ejectment action, it is not a counterclaim at all, but will be treated nonetheless in

the section that follows.

## III.  DEUTSCHE'S EJECTMENT CLAIM

What remains is the claim that began all this: Deutsche's claim to possession of the Garst property.  Compl. ¶¶ 3-6.  The essential elements for an ejectment action are that plaintiff "has both legal title to the property when his complaint is filed and a right to immediate possession."  *Muller v. Seeds*, 919 So. 2d 1174, 1177 (Ala. 2005) (citations omitted), *overruled on other grounds by Steele v. Fed. Nat. Mortg. Ass'n*, 69 So. 3d 89 (Ala. 2010).  "Further, if the mortgage and foreclosure deed . . . are produced, as well as proof of both demand for and refusal to deliver possession, then all the necessary elements of ejectment are established."  *Id.* (omission in original) (citation omitted). Deutsche has a foreclosure deed, made a demand for possession, and Garst has refused to deliver possession.

It falls to Garst, then, to raise and support with evidence a viable affirmative defense.  Garst's separate affirmative statutory claims, even if proven, are compensable by damages but do not provide a defense to the ejectment action.

Ejectment, among the oldest and most traditionally austere forms of action in the common law, has in modern times become subject to those softer-hearted defenses provided by "equity." *See Massey v. Jackson*, 726 So. 2d 656, 659 (Ala. Civ. App. 1998) ("We must conclude that the Rules of Civil Procedure, having

26

merged law and equity practice in this state, have empowered
trial courts to consider not only legal defenses to ejectment
claims, but equitable defenses as well."). Thus, courts have
found ejectment claims wanting, even after foreclosure sales
supported by proper foreclosure deeds, when enforcement of
delinquent mortgage payments was waived, *id.*; when "the price
realized at the foreclosure sale . . . was so low in relation to
the market value of the property as to shock the conscience,"
*Berry v. Deutsche Bank Nat. Trust Co.*, 57 So. 3d 142, 148 (Ala.
Civ. App. 2010); and when foreclosure was blocked by the doctrine
of laches, *see Williamson v. Shoults*, 423 So. 2d 874, 877 (Ala.
Civ. App. 1982). Why not other equitable defenses, such as those
of unclean hands or promissory estoppel?

Garst has an arguable estoppel defense to the ejectment
action. Estoppel has three elements: an actor communicates
something in a misleading way, another relies on that
communication, and the other is materially harmed if the actor is
later permitted to assert any claim inconsistent with his earlier
communication. *See Mazer v. Jackson Ins. Agency*, 340 So. 2d 770,
773 (Ala. 1976) (quoting Dobbs, Law of Remedies, § 2.3 (1973));
*see also Corvello v. Wells Fargo Bank, NA*, 11-16234, 2013 WL
4017279, at *4-*6 (9th Cir. Aug. 8, 2013) (granting rescission of
foreclosure sale when mortgage servicer failed to offer loan
modification in violation of promise in "trial period plan" form

letter).  In this case, if Garst is believed, Deutsche
communicated to him that foreclosure would be delayed until it
reviewed his last presented modification application.  Garst had
available to him various methods of defeating foreclosure up the
day of a valid foreclosure sale, Def.'s Facts ¶ 72, but forewent
those methods in reliance on Deutsche's promises.  Deutsche
cannot now be heard to say that loan modification was never
possible and that it never intended to extend the foreclosure
date.  It did, in fact, extend the foreclosure date, and it did,
in fact, continue to communicate with Garst past the deadlines it
set.

Deutsche implicitly attacks Garst's estoppel defense to the
foreclosure with the idea that the Statute of Frauds that served
to defeat Garst's affirmative promissory fraud claim also defeats
his estoppel defense.  It relies on the Alabama Court of Civil
Appeals' recent decision in *Coleman v. BAC Servicing*, 104 So. 3d
195, 207, which held that "to allow a defective-foreclosure
defense that is predicated upon an alleged agreement that is
unenforceable under the Statute of Frauds would also defeat the
purpose of the Statute of Frauds."  While Deutsche relies
entirely upon this expression lifted from *Coleman*, which is only
a minor part of a lengthy opinion concerned primarily with
whether a complicated chain of mortgage ownership ended properly

with the company that finally foreclosed,[5] it fails to recognize
the clear distinction between an affirmative promissory fraud
claim, which carries with it the requirement of a signed writing
discussed above, and the estoppel defense described here.  To the
extent that this minor section of the *Coleman* opinion is
inconsistent with Alabama Supreme Court precedent, this court is
not bound by it.  The Alabama Court of Civil Appeals cannot
overrule the Supreme Court of Alabama.  Nor does the fact that
the Supreme Court denied *certiorari* in *Coleman* mean that the
Supreme Court was adopting the *Coleman* court's opinion or its
rationale, especially if to do so would constitute an overruling
of its existing precedent.  This is exactly what Deutsche's
reading of *Coleman* would do.

The *Coleman* court based its ruling on *Holman v. Childersburg
Bancorporation, Inc.*, 852 So. 2d 691, 699-702 (Ala. 2002), in
which the Supreme Court held that "where . . . an element of a
**tort claim** turns on the existence of an alleged agreement that
cannot, consistent with the Statute of Frauds, be proved to
support a breach-of-contract claim, the Statute of Frauds also
bars proof of that agreement to support the tort claim," *id.* at
701 (emphasis added).  Thus, while Garst's promissory **fraud** claim

---

[5] The specter of MERS haunts that case as thoroughly as it
does this one.  For instance, if a rich friend of Garst had
wanted to bid at the subject foreclosure sale and had conducted a
title search in the probate records, he would not have found
Deutsche's name as mortgagee.

is barred by the Statute of Frauds, the Supreme Court has never denied the viability of the equitable defense of promissory **estoppel** to an ejectment action.  This defense does not depend upon a writing.

The court has already found that Garst cannot bring an action for breach of contract.  *Holman* and related cases prevent plaintiffs from avoiding the Statute of Frauds by dressing their contract claims in tort costumes.  But Garst's estoppel claim is entirely outside the realm of both contracts and torts.  He does not seek to modify or to rescind his obligation to Deutsche. Instead, he seeks to defend against a foreclosure sale that was achieved, he says, by lulling him into a false sense of security with blatantly untrue promises.  The Supreme Court of Alabama has never found this type of equitable **defense** precluded by the Statute of Frauds.  *See, e.g., Bruce*, at 58 (overruling tort cases "to the extent, **but only to the extent**, that they" conflict with the Court's new heightened Statute of Frauds holding) (emphasis added).  This court, like the *Coleman* court, is bound to follow the Supreme Court's traditional foreclosure rules that have not been discarded.  Under those still existing rules, "[i]t is a settled principle that the foreclosure of a mortgage on lands, after default, is *per se* a matter of equitable jurisdiction and presents a case of original independent equity." *Wilson v. Crocker*, 267 Ala. 26, 28 (1957).  It will take the

Supreme Court itself, and not the Court of Civil Appeals, to take
*Bruce* beyond its borders.  Sitting in diversity, this court will
follow the Alabama Supreme Court.[6]

Just three years ago, the Alabama Court of Civil Appeals
addressed a controversy involving the same ejectment plaintiff
(Deutsche), represented by the same law firm (Sirote & Permutt,
P.C.), in the same procedural posture (summary judgment), as
follows: "when a plaintiff in an ejectment action claims title to
the property by virtue of its having purchased the property at a
foreclosure sale, the existence of a genuine issue of material
fact regarding the validity of the foreclosure sale will preclude
the entry of a summary judgment in favor of the plaintiff."
*Berry*, 57 So. 3d at 147 (Ala. Civ. App. 2010).  Thus, to prevail
on an ejectment claim at the summary judgment stage, Deutsche
must not only demonstrate with undisputed evidence the adequacy
of its foreclosure procedures, but must also explain away facts

---

[6] This is not to say that Garst's defense would surely fail
were the Statute of Frauds found to apply.  To satisfy the
statute, Garst need only produce any written evidence that
substantiates his claim and protects Deutsche and the court from
false testimony.  *See Levy v. Allen*, 257 Ala. 326, 331, 58 So. 2d
617, 622 (1951) ("[N]o formality is required; nor does it signify
at all what is the nature or character of the document containing
such written statement--whether it be a letter written by the
party to be charged to the person with whom he contracted, or to
any other person, or a deed, or other legal instrument, or an
answer to a bill, or an affidavit in chancery, in bankruptcy, or
in lunacy.") (citation omitted).  Here, Garst has produced both
letters GMAC wrote to him, Garst Ex. O, P, and internal records
of GMAC, Garst Ex. M, that substantiate his claim of a promise
not to foreclose.

that may, in law or equity, adversely affect the efficacy of the foreclosure sale.

**CONCLUSION**

For the foregoing reasons, Deutsche's motion for summary judgment will be denied as to Garst's claims brought under 15 U.S.C. § 1692e and § 1692f and Deutsche's ejectment claim, but will be granted as to all other claims. The court will contemporaneously issue an order consistent with this Memorandum Opinion.

DONE this 11th day of September, 2013.


_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

32